### Adolphus Cameron v. The State.

1. DECLARATIONS OF ACCUSED.—Declarations of the accused as to the character of his possession of property, for theft of which he is on trial, are not admissible in defense, unless such possession and acts of ownership, at the time of such declarations, are proven by other testimony than by the declarations so offered.
2. POSSESSION OF CATTLE IN THE RANGE.—The temporary absence of the owner of cattle from the State, leaving his stock on their accustomed range and not in charge of any agent, is not an abandonment of the possession of such cattle.
3. THEFT OF CATTLE.—See testimony held insufficient to support a verdict of guilty of theft of cattle.

APPEAL from the Criminal District Court of Dallas. Tried below before the Hon. Silas Hare.

Cameron was indicted for theft of a steer, the property of Jesse Daniels.

On the trial E. A. Daniels, witness for the State, testified

"that about August 1, 1873, he went to the cattle herd of one Buck Dawson, in Dallas county, and there found a certain brown or black steer with the brand of Jesse Daniels upon it; both ears were cut smooth off to his head; he was dewlapped and branded D, the brand of Jesse Daniels. Jesse Daniels at that time was at the Oil Springs in the Indian Territory, sick. After the indictment was found, defendant came, while drinking, to witness and asked him about the matter. Witness described the steer to defendant, and told him he had seen such a steer in Dawson's herd. Defendant said that 'if he had sold Jesse Daniels' steer he was willing to pay for the same; that he had bought the steer from a man, (witness does not remember the name,) and had a bill of sale and could produce it.' Defendant did not show any bill of sale."

On cross-examination : "Witness is brother of Jesse Daniels, and not in charge of his cattle; knew the steer by the mark and brand only. Jesse Daniels had no other steer marked, branded, and dewlapped as this one was. It was large and fine, worth twenty dollars. Witness saw the steer on the opposite side of the river and several miles from where Dawson had been herding his cattle, and he was driving them out of the county."

Buck Dawson, for the State, testified that "sometime in July, 1873, witness was buying cattle in Dallas county, and had them under herd. Witness purchased a dun or brown steer from defendant; don't recollect its brand; knows there was a D about it; the steer had one or both ears cut off; was dewlapped and bob-tailed. Witness paid fifteen dollars for it, its market value. The herd was kept in a public place, and people in the neighborhood could come and examine the herd."

Jesse Daniels, for the State: "Witness owned a dark-brown or black steer in the year 1873 ; has never seen it since he left for the Oil Springs in that year, when the steer was in the range in Dallas county. It was four years old, branded

D on left shoulder, was dewlapped, and had a bob tail; was the property of witness, and worth twenty dollars; was taken without the consent of witness; had owned the steer since it was a calf; had never seen it out of Dallas county; that was its range. "When I bought the steer and its mother I put my brand upon it and dewlapped it, because its ears were off and I could not mark it." * * "I saw the defendant at Johnson's station one day, and spoke to him about selling one of my steers to Dawson. At first he denied it, and then remarked 'there is no use in lying about it; I did put a steer in that had your brand on it, but not your mark.' I then described the steer and he said 'that it was the description of the one he had taken, and that he would pay for it; that he had purchased it from a western man whose name, I think he said, was Adams; that he had a bill of sale.' He never showed it. I told him I would know the steer he had taken better than any other I owned. Defendant afterwards paid me twenty-two dollars in currency for the steer, which was its value. This was after the indictment was found." * * * "No one was in charge of my cattle when I went to the nation. Defendant has been raised about ten miles from where I live. I have known him from a child. He is familiar with cattle and with those in the range where my cattle ran."

A bill of exceptions in the record shows that defendant offered to prove by two witnesses "the declarations of defendant made two or three months before the time of the alleged theft of the steer, to the effect that he, defendant, had bought the steer from Smith Adams, and that said steer was his property, and that he (defendant) had herded the steer and exercised acts of ownership over said steer, which proof was excluded by the court on the ground that it was not shown by other proof, nor did defendant propose to show by other proof than his said declarations that he had, or ever before had had the actual possession or control of said steer."

The court, after the statutory definition of theft, charged the jury : "The jury are the exclusive judges of the weight of testimony and the credibility of witnesses ; that is, you can believe or disbelieve as much or as little of the testimony of any witness as you deem proper, and when the declarations or confessions of the defendant are given in evidence, the jury, after giving them a reasonable construction in the light of surrounding circumstances, in like manner can give to such declarations or confessions such weight as you may deem them entitled to."

The jury found a verdict of guilty, and fixed the punishment at two years in the penitentiary. Motion for new trial was overruled, and defendant appealed.

*Ray & Field*, for appellant, cited Garcia *v.* The State, 26 Tex., 210 ; Ward *v.* The State, 41 Tex., 612 ; Poag *v.* The State, 40 Tex., 151 ; Herber *v.* The State, 7 Tex., 69 ; Taylor *v.* The State, 35 Tex., 496 ; Daniels *v.* The State, 24 Tex., 389 ; Johnson *v.* The State, 27 Tex., 766.

*George Clark, Attorney General,* for the State.

REEVES, ASSOCIATE JUSTICE.—The question of the guilt or the innocence of the appellant was fairly submitted in the charge of the court to the jury. If the property had been found in the possession of the appellant, his declaration at the time explanatory of his possession would have been admissible in evidence. But it was not shown from the facts contained in the bill of exceptions that appellant proposed to prove, otherwise than by his own declaration, that he was in possession of the steer when he said to the witnesses that he had bought it. The predicate was not laid for the admission of his declarations as to the character of his possession. He did not offer to prove by the witnesses that he had ever been in possession of the animal or had exercised acts of ownership over it as facts within their knowledge, but the proposition was to prove that appellant had made.

such statements two or three months before the time of the alleged theft of the steer. Though there was no error in excluding proof of the alleged facts, yet if the proof had gone to the jury it is not perceived that it could have been of any benefit to the defendant. It had been shown by other evidence that the defendant claimed the steer by purchase from Adams, and said that he had a bill of sale and could produce it. This he failed to do, either at that time or on the trial. His declarations about possession and the exercise of acts of ownership, made to the witnesses two or three months before the time of the alleged theft of the steer, could have been of no avail as a defense to the charge against him, in view of his denial at a subsequent time that he had sold the animal to Dawson, when spoken to about it by Daniels. He at first denied having done so, and then remarked, in the language of the witness, "that there was no use in lying about it," and admitted that he had put the steer in Dawson's herd, and offered to pay the owner for it, and afterwards did pay him. Dawson proves that he bought a steer from the defendant, describing it as a dun or brown steer. Other witnesses describe Daniels' steer as being brown or black. The word "dun," as referring to color, partakes of brown and black. (Webster's Dic.) In other respects the identity of the animal as Daniels' property was sufficiently shown. If it could admit of a doubt, the doubt was entirely removed by the admissions of the defendant, as shown in the evidence of Jesse Daniels. It was further shown that Jesse Daniels was the owner of the animal, and that it was in his possession, though in the "range," where it had run since a calf. The temporary absence of the owner from the State, leaving his stock in its accustomed range, was not an act of abandonment, as seems to be contended for appellant. The defendant did not pay or offer to pay the owner for the property until after he was indicted, having first denied the sale to Dawson, and afterwards admitting that he had put the steer in Dawson's

herd, and, as an excuse for his conduct, claimed under a purchase and bill of sale from Adams. It does not appear that any effort was made to procure the attendance of Adams as a witness on the trial, nor was the bill of sale produced or accounted for. We think the evidence fully authorized the jury to return a verdict of guilty against the defendant, as was done.

We find no objection to the charge of the court. The case did not call for any charge upon an open taking of property under claim of right. Finding no error in the charge of the court, the judgment is affirmed.

AFFIRMED.