[No. 1589.]

Will. Taylor v. The State.

1. Theft—Practice—Possession of Recently Stolen Property.—
The ancient rule that a party was not permitted to introduce his expla-
nation of his possession of recently stolen property, unless he was in pos-
session at the time the explanation was made, has been so far modified
that he can now introduce his explanation if made when his possession
was challenged, or when he was charged with the theft.

2. Same.—To state the rule in another form: To be admissible, the party
must be in possession of the property, or the explanation must be made
when he is arrested for the theft, or when he is charged with it, or in-
formed that he is suspected of it.

3. Same.—Another rule upon the subject, to be borne in mind, is that the
explanation must be made when the party is first directly or circumstan-
tially called upon to explain. Note the opinion for explanation properly
excluded under the rules quoted.

4. Same.—Notwithstanding the rules cited, and the failure of a defendant to
explain his possession of, or connection with, the stolen property, when he
was arrested for the offense, he was not deprived thereby of his right to
prove that his connection with the stolen property was an innocent, and
not a guilty one. Nor was it incumbent on him to establish an inno-
cent connection by a preponderance of evidence. Evidence sufficient to
raise a reasonable doubt upon the question of guilty connection would
entitle him to an acquittal.

5. Same—Fact Case—Evidence.—See evidence held insufficient to sustain
a conviction for theft of cattle.

Appeal from the District Court of Johnson. Tried below be-
fore the Hon. Jo. Abbott.

The conviction in this case was for the theft of six head of
cattle, the property of Forbis and Gambrell. The indictment
charged the offense to have been committed on the twentieth
day of August, 1883, and laid the venue in Johnson county.

The preliminary statement of the facts in the case, as it ap-
pears in the opinion, was taken from the testimony of L. B.
Forbis, the first witness for the State. In addition to his testi-
mony, as set out in that statement, the witness Forbis stated
that, among the number of cattle driven to Kopperl by Ferrill,
he found six belonging to himself and Gambrell, branded in
their brand, F O R. These cattle ran in their pasture situated

in Parker, Tarrant and Johnson counties.   Previous to his recovery of these cattle at Kopperl, witness had not seen them for a week or ten days.   He gave no one his consent to take them, and Gambrell was and had been for months in the State of Illinois.   The witness's pasture, in which his cattle ran, lay forty miles distant from Kopperl, twenty-five from Fort Worth, and eighteen from Cleburne.   Cleburne had two railroads, Fort Worth several, and Kopperl but one.   The roads to Cleburne from said pasture were smooth, open and easily traveled; that from the pasture to Kopperl was over very rough country. Where the witness first saw the defendant there was no road. The defendant was on the point of shipping the cattle on the south bound train to Galveston when witness overhauled him.

Henry Taylor testified, for the State, that he had seen the defendant but once prior to this trial.   That was on the thirty-first day of August, 1883, when, with Ferrill, he was trying to make about twenty head of cattle cross the Brazos river at a point about a quarter of a mile below the Lot crossing.   The point they were attempting to ford was not a regular crossing.   Defendant yelled at the cattle, whereupon Ferrill cursed him and told him not to cry so loud.   Defendant ran one cow down the creek and left her after she jumped a fence into a pasture. Witness saw that cow again that evening.   This point was west of the Brazos river and was in Johnson county.   Of the twenty head of cattle driven by Ferrell and defendant, witness noticed that several were branded F O R.   Witness had never before known any one to cross cattle at the point where these were crossed.

Tom Williams testified, for the State, that he saw the cattle crossed at the time and place described by the witness Henry Taylor, with whom, a short time previous, the witness had been. He had, however, gotten too far off to recognize the two parties in charge of the cattle.   Witness had often seen parties, the Hudsons among the number, cross cattle at that point on the river.

W. T. Allman, shipping clerk of the Gulf and Santa Fe Railroad at Kopperl, testified, for the State, that on Monday morning, August —, 1883, about ten o'clock, Ferrell came to his office and told him that he desired to ship some cattle that night; that he preferred shipping them at night.   Witness replied that he would have a car ready if possible.   He called again that night, saying he had the cattle ready, and he and

witness were making out the contract of shipment when Ferrell was arrested. The cattle were being shipped in Ferrell's name. The defendant was not known to the witness in the transaction, nor did the witness see him until after the arrest of Ferrell. The weather was then quite warm, and it was customary for parties to ship cattle at night. Witness then called the brands of the cattle offered for shipment, which list included the six head the defendant was charged with stealing.

The testimony of sheriff Boyd is set out in the opinion, as, in substance, is that offered by the defense.

The motion for new trial presented the questions treated in the opinion, and arraigned the action of the trial court in excluding certain evidence tendered by defendant.

*Oates & English*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Hurt, Judge. This is a conviction for the theft of six head of cattle, the property of Forbis and Gambrell.

On the thirty-first day of August, 1883, one Bob Ferrell, who has been tried and convicted of this theft, went to the town of Kopperl and made arrangements to ship a car load of cattle from that point to Galveston. L. B. Forbis and others, being informed of this fact, placed themselves on the roadside to await Ferrell and Taylor with the cattle. About ten o'clock that night Ferrell and Taylor passed, driving the cattle in the direction of Kopperl, the cattle being driven by a gentle whistle. The cattle were driven to the town of Kopperl, and "just as Ferrell was about to sign the bill of *sale*" he was arrested by sheriff Boyd. At this time the United States marshal, Moody, was told by the sheriff to watch defendant Taylor, and soon afterwards the sheriff arrested the defendant, telling him at the time that he was arrested upon a *capias pro fine*.

After Taylor was taken to Cleburne, in Johnson county, he was there arrested for the theft of the cattle. It nowhere appears that Taylor was informed in any manner at Kopperl that he was charged or suspected of the theft of the cattle.

By bill of exceptions it appears that upon the trial "defendant proved by John H. Boyd, sheriff of Johnson county, that he arrested the defendant at Kopperl, Bosque county, Texas, at the same time he arrested Ferrell for the theft of cattle; that he ar-

rested defendant on a *capias pro fine*, and not for theft of cattle, and that he so informed defendant; that the day after the arrest at night he reâched Cleburne, and turned the defendant over to Warren Lockett, deputy city marshal, by him to be held in custody until the *capias pro fine* should be satisfied. Whereupon defendant offered to prove by said Lockett that he, defendant, on the same day, stated to said Lockett, about twenty or thirty minutes before he was arrested on the charge of theft, that he was simply a hired hand of Bob Ferrell in driving the cattle, and that he did not know anything about the theft of the cattle; to which objection was made by the State's counsel, and the objection sustained by the court."

To this bill the learned judge appends this explanation:

" The said witness stated that defendant said nothing about it at the time of his arrest, but the conversation occurred before his arrest, and while he, witness, held defendant under the *capias pro fine*. This bill is made out by the court for the reason that the bill made out by defendant's counsel represents that the conversation between witness and defendant occurred at the time of arrest, when the witness stated it was before, as stated in this bill."

Under the ancient authorities a party was not permitted to introduce his explanation of his possession of property recently stolen, unless he was in possession of the property at the time the explanation was made. This rule has been relaxed so as to permit him to give in evidence his explanation, if made at the time his possession was challenged, or when charged with the theft, etc. To illustrate: Suppose the city marshal had charged defendant, or had informed him that he was suspected or charged with the theft of the cattle. If this had been the first time his attention had been called to the fact that he was implicated in the theft, his explanation of his possession would have been admissible in his behalf, though not in possession when made.

The rule, however, has never been extended to such length as will permit a party to introduce his explanations made at any and all times, under any and all circumstances. To be admissible the party must be in possession of the property, or the explanation must be made when arrested for the theft, or when charged, or informed that he is suspected of the theft. And another rule must be borne in mind, which is that the explanation

must be made when the party is first directly or circumstantially called upon to explain.

Upon this subject the authorities or decisions are not harmonious. We believe, however, that the above rules are correct. (See authorities as follows: *Wood* v. *The State*, 41 Texas, 611; *Taylor* v. *The State*, 7 Texas Ct. App., 659; *Shackelford* v. *The State*, 43 Texas, 138; *Darnell* v. *The State*, Id., 147. But see *Cameron* v. *The State*, 44 Texas, 652; *Roberson* v. *The State*, 3 Texas Ct. App., 487.)

Under the rule above stated the court did not err in rejecting the explanations of defendant. If, however, the bill had shown that the city marshal charged the defendant with the theft, or informed him that he was charged or suspected of the theft of the cattle, his declarations would have been admissible.

By another bill it appears that the defendant proposed to prove by a witness that Ferrell stated to witness that he had hired defendant to help drive the cattle. The defendant not being present, this was hearsay, and there was no error in its rejection by the court.

Do the facts as presented to us in the record sustain this conviction? For conviction the State relies alone upon recent possession without explanation, for it appears by the second bill of exceptions that, when arrested, the defendant made no attempt to explain his connection with the cattle; hence, we are correct in the statement that the State relies upon possession recently after the theft, and failure to explain the same.

Is there any other fact, save these, in the record tending to show the guilt of defendant? It may be urged in support of the conviction that, as the cattle were driven at night, very quietly and noiselessly, that this was a very strong circumstance showing guilty knowledge on part of defendant. In regard to the quiet manner in which the cattle were driven, there is a very pregnant fact, to-wit: When a cow was attempting to pass the defendant he hallooed at her, and was reproved by Ferrell for being too noisy. This shows that the defendant was not only boisterous, but had not been informed by Ferrell of the necessity of secrecy.

That the cattle were shipped at night, was, at that season of the year, a very common occurrence. This is shown by W. L. Almon, the shipping clerk for the company at Kopperl.

What other criminative fact is shown in the record? Certainly it cannot be contended that because Ferrell and defend-

ant were at William Oldham's on Monday before they were arrested, in the west end of Johnson county, that this is a circumstance against the defendant. Nor can we see the force or relevancy of the fact that two men, unknown to the witnesses, were seen driving cattle in Kennard's pasture. This pasture is situated twenty-five miles from Kopperl, while the pasture of the prosecutors, Forbis and Gambrell, is forty miles distant.

Let us return to the State's case, which is reduced to recent possession of stolen property without explanation by defendant when called upon when arrested to explain.

If, when arrested, the defendant had stated that he was a hired hand, to convict in this case the State would have been compelled to disprove this fact. But he did not explain, and if the case rested here the conviction should be sustained. A failure to explain, however, does not deprive the defendant of the right to prove that his connection with the cattle was an innocent and not a guilty connection. Nor was it incumbent on him to establish an innocent connection by a preponderance of evidence. If there be raised a reasonable doubt that his connection with the cattle was fraudulent—guilty—he was entitled to an acquittal. Has he established a reasonable account of his possession, or shown an innocent connection with the cattle?

By his mother he proved that, on August 1, he told her that he had hired to Ferrell to drive cattle at one dollar per day. Bony Donaldson states that, just before the defendant went out with Ferrell he was at his saddle-shop, and told him that he had hired to Ferrell at one dollar per day, to drive cattle, and that he, the witness, sold Ferrell a saddle for William Taylor to ride. To Shaw and to Lockett the defendant made the same statement, "that he was hired to Ferrell to drive cattle." William Oldham states that Ferrell and the defendant stayed at his house on Monday night before they were arrested on Friday night; that Ferrell said he had Will. Taylor hired to help him gather stock, and he commanded him to go and bring up their horses and directed him as a hired hand.

We find the defendant, not only after the theft, but for days and months prior thereto, to quite a number of persons proclaiming that he had hired to Ferrell to drive stock. We also find Ferrell purchasing a saddle for the defendant to ride, and, on Monday before the arrest, stating that he had hired him: commanding and ordering the defendant as his servant, and that the defendant obeyed as such. This defense is natural and in

perfect harmony with his connection with the cattle; in fact, there is not the slightest inconsistency between the case made by the State and the defense established by the defendant. The facts and circumstances, taken as a whole, are not consistent with guilt, but are consistent with his innocence.

This verdict of the jury is undoubtedly founded upon the fact that the defendant was found in possession of the cattle soon after they were stolen and failed to explain. Certainly he has shown by the evidence of quite a number of witnesses that his was not a guilty possession. This being the case, the State must prove that, though a hired hand, he nevertheless knew the fraudulent intent of Ferrell, and, with this knowledge, aided and assisted him in the theft. There are some circumstances which may, in a very slight manner, tend to create suspicion that defendant may possibly have known that Ferrell had acquired the cattle corruptly. Certainly there are no facts carrying the case beyond a suspicion.

We are not satisfied with this verdict. We do not believe it sustained by the evidence, and the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 2, 1884.