## WILL TAYLOR vs. THE STATE.

COURT OF APPEALS, GALVESTON TERM, 1884.

*Explanation by defendant of his posession of recently stolen property.* The ancient rule that a party could not be permitted to introduce his explanation of his possession of property recently stolen unless he was in posession of the property at the time the explanation was made has been so far relaxed as to permit him to give in evidence his explanation if made at the time his posession was challenged or he was charged with the theft. See the opinion in illustration.

*Same.* The strict rule upon the subject is that to be admissible the explanation must be made when the defendant is first directly or circumstantially called upon to explain. Note explanations properly excluded.

*Evidence.*—It was not error to exclude the testimony offered to show that a third party, in the absense of defendant stated to the witness that he had hired the defendant to drive the alleged stolen cattle, such evidence being hearsay.

*Practice.* Where the defendant, being arrested for theft, gives a reasonable explanation of his connection with the stolen property, it devolves upon the State to disprove the explanation in order to convict. But a failure on the part of such defendant to give an explanation when arrested, will not operate to deprive him of his right to prove that his connection with the property was innocent. And, stating the rule in a broader sense, he would not be compelled, in order to entitle himself to an acquittal, to show his innocent connection conclusively. If his evidence raised a reasonable doubt on the question, it was sufficient. See evidence held insufficient to support a conviction for theft.

Appeal from Johnson County.

No brief for appellant.

*J. H. Burts,* Assistant Attorney General; for the State.

Opinion by Hurt, J.

This is a conviction for the theft of six head of cattle, the property of Forbis & Gambrell. On the 31st day of August, 1883, one Bob Ferrell who has been tried and convicted of this theft went to the town of Kopperl and made arrangements to ship a car load of cattle from that point to Galveston. L. P. Forbis and others being informed of this fact, placed themselves on the roadside to await Ferrell and Taylor with the cattle. About ten o'clock that night Ferrell and Taylor passed, driving the cattle in the direction of Kopperl, the cattle being driven by a gentle whistle. The cattle were driven to the town of Kopperl, and just as Ferrell was about to sign the bill of sale he was arrested by sheriff Boyd. At this time the U. S. Marshall Moody was told by the sheriff to watch defendant Taylor, and soon after the sheriff arrested defendant, telling him at the time that he was arrested upon a *capias profine.* After Taylor

was taken to Cleburne in Johnson county he was then arrest-
ed for the theft of the cattle. It nowhere appears that Taylor was
informed in any manner at Kopperl that he was charged or suspect-
ed of the theft of the cattle. By bill of exceptions it appears that
upon the trial "defendant proved by John H. Boyd, sheriff of John-
son county, that he arrested the defendant at Kopperl, Bosque coun-
ty, Texas, at the same time he arrested Ferrell for the theft of cat-
tle that, he arrested defendant on a *capias profine* and not for theft
of cattle, and that he so informed defendant; that the day after the
arrest at night, he reached Cleburne and turned the defendant over
to Warren Locket, deputy city marshall, by him to be held in custo-
dy until the *capias profine* should be satisfied. Thereupon defend-
ant offered to prove by said Locket that he, defendant, on same day
stated to said Locket about twenty or thirty minutes before he was
arrested on the charge of theft, that he was simply a hired hand of
Bob Ferrell in driving the cattle and that he did not know anything
about the theft of the cattle, to which objection was made by the
State's counsel, and the objection sustained by the court." To this
bill the learned judge appends this explanation : The said witness
stated that defendant said nothing about it at the time of his ar-
rest but the conversation occurred before his arrest and while he,
witness, held defendant under the *capias profine.* This bill is made
out by the court for the reason that the bill made out by defendant's
counsel represents that the conversation between witness and defen-
dant occurred at the time of arrest, when the witness stated it was
before, as stated in this bill.

Under the ancient authorities a party was not permitted to intro-
duce his explantain of his possession of property recently stolen
unless he was in possession of the property at the time the explana-
tion was made.

This rule has been relaxed so as to permit him to give in evidence
his explanation, if made at the time his posession was challenged,
or when charged with the theft, etc. To illustrate : Suppose the
city marshal had charged defendant, or had informed him that he
was suspected or charged with the theft of the cattle. If this had
been the first time his attention had been called to the fact that he
was implicated in the theft, his explanation of his posession would
have been admissible in his behalf, though not in posession when
made. The rule however had never been extended to such length

as will permit a party to introduce his explanations made at any and all times, under any and all circumstances. To be admissible the party must be in posession of the property, or the explanation must be made wnen arrested for theft, or when charged, or imformed that he is suspected of the theft. And another rule must be borne in mind, which is that the explanation must be made when the party is first directly or circumstantially called upon to explain.

Upon this subject the authorities or decisions are not harmonious. We believe however that the above rules are correct.

See authorities as follows : Word vs. The State, 41 Texas, 611; Shackelford vs. The State, 43 Texas, 138; Darnell vs. The State, 2 147; But see Cameron vs. The State, 44 Texas, 652; Roberson vs. The State, 3 Texas, Ct. App., 487.

Under the rule above stated the court did not err in rejecting the explanations of defendant.

If however the bill had shown that the city marshall charged the defendant with the theft, or informed him that he was charged or suspected of the theft of the cattle his declarations would have been admissible.

By another bill it appears that the defendant proposed to prove by a witness that Ferrell stated to witness that he had hired defendant to help drive the cattle. The defendant not being present this was hearsay, and there was no error in its rejection by the court.

Do the facts as presented to us in the record sustain this conviction ?

For conviction the State relies alone upon recent posession without explanation, for it appears by the second bill of exceptions that when arrested he made no attempt to explain his connection with the cattle, hence we are correct in the statement that the State relies upon posession recently after the theft, and failure to explain the same. Is there any other fact, save these, in the record tending to show the guilt of defendant ?

It may be urged in support of the conviction that as the cattle were driven at night, very quickly and noiselessly that this was a very strong circumstance showing guilty knowledge on part of defendant.

In regard to the quiet manner in which the cattle were driven there is a very pregnant fact, to-wit : When a cow was attempting

to pass defendant he hallooed at her and was reproved by Ferrell for being too noisy.

This shows that the defendant was not only boisterous, but had not been informed by Ferrell of the necessity of secrecy. That the cattle were shipped at night, was at that season of the year, a very common occurrence. This is shown by W. L. Almon, the shipping clerk, for the company at Kopperl.

What other criminative fact is shown in the record? Certainly it cannot be contended that because Ferrell and defendant were at William Oldham's on Monday before they were arrested, in the west end of Johnson county, that this is a circumstance against the defendant. Nor can we see the force or relevency of the fact that two men, unknown to the witnesses, were seen driving cattle in Kennard's pasture. This pasture is situated twenty-five miles from Kopperal, while the pasture of the prosecutors, Forbis and Grambell, is forty miles distant. Let us return to the State's case which is reduced to recent possession of stolen property without explanation by defendant when called upon, when arrested, to explain. If, when arrested, the defendant had stated that he was a hired hand, to convict in the case, the State would have been compelled to disprove this fact. But he did not explain, and if the case rested here the conviction should be sustained.

A failure to explain, however, does not deprive the defendant of the right to prove that his connection with the cattle was an innocent and not a guilty connection. Nor was it incumbent on him to establish an innocent connection by a preponderance of evidence.

If there be raised a reasonable doubt that his connection with the cattle was fraudulent, guilty, he was entitled to an acquittal. Has he established a reasonable account of his possession, or shown an innocent connection with the cattle? By his mother he proved that on August 1st, he told her that he had hired to Ferrell to drive cattle at one dollar per day.

Bony Donaldson states that just before the defendant went out with Ferrell, he was at his saddle-shop, and told him that he had hired to Ferrell at one dollar per day, to drive cattle, and that he, the witness, sold Ferrell a saddle for William Taylor to ride.

To Shaw and to Lockett, the defendant made the same statement, "that he was hired to Ferrell to drive cattle."

William Oldham states that Ferrell and the defendant stayed at

his house on Monday night before they were arrested on Friday night; that Ferrell said that he had Will Taylor hired to help him gather stock, and he commanded him to go and bring up their horses and directed him as a hired hand. We find the defendant not only after the theft, but for days and months prior thereto, to quit a number of persons proclaiming that he had hired to Ferrell to drive stock. We also find Ferrell purchasing a saddle for the defendant to ride, and on Monday before the arrest, stating that he had hired him; commanding and ordering the defendant as his servant, and that the defendant obeyed as such.

This defense is natural and in perfect harmony with his connection with the cattle; in fact there is not the slightest variance in the case made by the State and the defense established by the defendant.

The facts and circumstances taken as a whole are not consistent with guilt, but are consistent with his innocence.

This verdict of the jury is undoubtedly founded upon the fact that the defendant was found in possession of the cattle soon after they were stolen, and failed to explain. Certainly he has shown, by the evidence of quite a number of witnesses that his was not a guilty possession. This being the case, the State must prove that though a hired hand, he nevertheless knew the fraudulent intent of Ferrell, and with this knowledge, aided and assisted him in the theft. There are some circumstances which may, in a very slight manner, tend to create suspicion that defendant may possibly have known that Ferrell had acquired the cattle corruptly. Certainly there are no facts carrying the case beyond a suspicion. We are not satisfied with this verdict. We do not believe it is sustained by the evidence, and the judgment must be reversed and the same remanded.

Reversed and remanded.