[No. 1859.]

## Brown Littleton v. The State.

1. **Theft — Term Defined.** — "Possession" as used in the statutory definition of theft is constituted by the person unlawfully deprived of the property exercising actual care, control and management of the property, whether the same be lawful or unlawful.

2. **Same.** — An animal on the range is, if there be a special owner, in the possession of the special owner if he has the actual care, control and management of the same.

3. **Same — Ownership — Indictment.** — It is a well settled rule of pleading that the ownership of stolen property may be alleged either in the actual or special owner.

4. **Same — Pleading — Indictment — Evidence.** — The common law rules of pleading which appertain to theft cases have been superseded in this State by rules prescribed by statutory enactment. Under the Code of this State,

with respect to the theft of property having an actual and also a special owner, when it is sought, instead of alleging the ownership and possession in the special owner, to charge with respect to both owners, the indictment, to be sufficient, should allege the possession in the special owner, having the actual care, control and management of the same, and holding it for the real owner. The indictment in this case, alleging both the ownership and possession in P. H., is not supported by evidence which establishes the real ownership in P. H., but that the property was taken from the possession of G. H., who had the actual care, control and management of the same. See the opinion *in extenso* for an elaborate discussion of the question, and for an elucidation of the differences between the common law of larceny and the law of theft under the Texas Codes.

APPEAL from the District Court of Frio. Tried below before the Hon. D. P. Marr.

The conviction in this case was for the theft of one head of cattle, the property of Peter Huegele, in Frio county, Texas, on the 15th day of May, 1882. The penalty imposed was a term of two years in the penitentiary.

The sixth ground relied upon in the motion for new trial, which raises the only question involved in the disposition of the appeal, reads as follows:

"6th. The verdict of the jury is not supported by the law, because the indictment charged upon its face that the property charged to have been stolen was taken from the possession of Peter Huegele, and the testimony shows that the care, control and management of the property was in George Haby, who had them upon the shares, and there was no allegation in the indictment charging such possession in said George Haby."

In this connection the trial judge filed his conclusions of law as follows:

"I file my conclusions of law on the point raised in the motion for new trial, etc., that the ownership and possession of the property should have been laid in the person shown to have had the care, control and management of the property, and not in the real owner as was done, as follows:

"1. Where one person owns property and another has the possession, charge or control of the same, or where two persons own property jointly, then in either case the ownership may be alleged to be in either. (Code Crim. Proc., art. 426.) I take it that the law means what it plainly says, and this provision is wholly unambiguous. The evidence shows Huegele, a very old man, in fact owned the cattle, and that George Haby, a son-in-law, held them on shares, and had then, and for some time before, exclusive control, manage-

ment, etc., of the property. Just what was the latter's interest in the cattle was not developed. That the cattle were on the range.

"2. I cannot hold that the real and unquestionable owner (Huegele) is not the owner either in law or in fact. He is certainly the owner, both in law and in fact, as alleged in the indictment.

"3. As to the possession of the property, I hold that the possession of the agent is in law the possession of the principal or owner, hence there is no variance in this respect. (*Thomas* v. *The State*, 1 Texas Ct. App., 289.)

"4. The statute defining theft certainly recognizes in plain terms an owner, and also a possessory agent holding the property for the owner. I am not aware of any decision of a superior court that has directly held, upon the point raised, that to allege the ownership and possession in the person having the real title to the stolen property would lead to a fatal variance where the evidence shows that, at the time of the theft, the property was in the possession of an agent of said owner, holding the same for him. The authorities and legal logic are to the contrary, in my judgment. There is some *obiter dicta* in *Bailey* v. *The State*, and in *Frazier* v. *The State*, 18 Texas Ct. App. Reports, that might warrant the inference that a majority of the present Court of Appeals are seriously contemplating announcing the proposition that, in theft, the ownership must be alleged in the person having the actual care, control and management of the property, regardless of the true ownership, etc., but, until they do so directly, I do not desire to sanction any such doctrine. Such a rule would require too fine discriminations at the hands of grand juries, who do not always furnish the district attorney with the full facts. They understand the owner to be the owner. So do I.

"As to the points raised and decided in the Frazier case, I fully agree, viz.: that the ownership *may be* laid in the actual possessor, etc., and that the State, *prima facie*, need only prove the want of consent of the person having the exclusive control or management, etc., of the property at the time. I use the word *or* because it is the language of the law. It is used in article 729 of the Penal Code, and again in article 426 of the Code of Criminal Procedure. Both of these articles relate to this question, and are in plain and intelligible language. I find no warrant for amending them through the courts by striking out "*or*" and inserting "*and.*" This would seem to belong to the Legislature, in the absence of any information derivable from the Codes themselves that the Legislature and revisers did not understand what language they used on this

subject, and said "or" so many times when they meant "and."
(*Springer* v. *The State*, 16 Texas Ct. App., 591.)

"I freely admit there is a question as to the allegation of posses-
sion, but not of ownership, in this case; still, the agent's possession is
that of the owner, who is the principal, and it seems that the cri-
terion established is privity *vel non.* (*Case* v. *The State*, 12 Texas
Ct. App., 228.)"

*T. T. Teel* and *R. W. Hudson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. The indictment alleges that the property belonged
to and was taken from the possession of Peter Huegele. The proof
shows that the animal was, as alleged, the property of Peter Hue-
gele; but it also shows that the animal, when taken, was in the
actual control and management of one George Haby. The animal
was taken from the range, but, being in the actual control and man-
agement of Haby, it was in his possession, because our Code defines
the meaning of the word "possession" in the definition of theft as
follows, viz.: "Possession of the person so unlawfully deprived of
property is constituted by the exercise of actual control, care and
management of the property, whether the same be lawful or not."
(Penal Code, art. 729.)

But it may be contended that, as it was upon the range, it was
therefore in the possession of both the general and the special owner.
In *Diggs* v. *The State*, 7 Texas Ct. App., 359, and in *Cameron* v.
*The State*, 44 Texas, 652, it is held that "animals on their accus-
tomed range are in the possession of their owner." In these cases
there was no third person or special owner intervening; there was
no one except the general owner in the actual care, control and
management of the stock. In this case, however, Haby had the
actual care, control and management of the property; hence by
the statute he was in the possession of the yearling.

The question, therefore, presented is,— when one person is in actual
care, control and management of property which belongs to another,
is it necessary,— essential,— to allege and prove that the property
was taken from his possession? Judge Marr, before whom this case
was tried, holds the negative of this question, and, in his conclusions
of law filed in the case and made a part of the record, submits very
plausible and cogent reasons in support of his views.

His first proposition (which is absolutely correct) is that "when

one person owns property and another has the possession, charge or control of the same, or when two persons own property jointly, then in either case the *ownership may be alleged to be in either*." (Italics ours.)    As above stated, this proposition is correct unquestionably.    Ownership may be alleged in either the actual or special owner.

With regard to possession he says: "As to possession of the property, I hold that the possession of the agent is in *law* the possession of the principal or owner; hence there is no variance in this respect." But again upon this point he says: "I freely admit there is a question as to the allegation of possession, but not ownership, in this case; still the agent's possession is that of the owner, who is the principal." This proposition is quite plausible and *apparently* rests upon solid grounds.

We deem it necessary at this point to allude to the definition of theft or larceny at common law, and to an indictment held sufficient under such definition.    Mr. Blackstone defines theft or larceny to be, "The felonious taking and carrying away of the personal goods of another." (Bl. Comm., vol. 2, book 4, p. 229.) In this definition nothing whatever is said about possession, consent of the owner, or the intent with which the goods were taken; and in exact accord with this definition will be found the indictment, the charging part of which is as follows: "That A. B., one hat of the goods and chattels of C. D., then and there being found, feloniously did steal, take and carry way." (Whar. Precedents, vol. 1, p. 415.)

At common law, therefore, the possession of the agent or bailee being that of the owner, under the allegation that the property was the goods and chattels of C. D. proof that they were taken from the possession of the agent or bailee of C. D. would not be in conflict with the allegation of ownership; and hence there would be no variance.    And under the common law definition of theft, which is synonymous with larceny (see Blackst., *supra*), if A. should live in England and own cattle in Texas, in possession of his agent, B., the property could be laid in A., and proof that they were taken from B., who had the possession, actual care, control or management of the same, would be no variance.

Why would there be no variance?    Simply because the fact that B. has the possession, or that the owner has the *actual* possession, is not made a material element or fact by the *definition* of the offense. But, on the other hand, this definition is so *broad* as to render it immaterial as to who has the actual possession, care, control or management of the property,— whether the owner or agent.    Being the

goods of C. D., whether taken from his actual possession or the possession of his agent, matters not; if feloniously taken, it is larceny,— theft.

This being the rule at common law, by reason of the common law meaning of theft, does the same rule obtain in Texas, where we have no common law offenses, but all are statutory? We answer that the rule will be the same if our statutory offense of theft is in fact or substance the same as at common law. Are they in substance the same? If not, what degree of departure is there from the common law? Upon this subject Mr. Bishop says: "The statutes of our States differ considerably, in this: that by some of them a statutory larceny is scarcely distinguishable from one at common law; by others the difference is very broad; and between these extremes there is every variety. Perhaps the widest departure from the common law is in Texas." . . . "There are various statutory provisions, but the one indicating its (theft) ordinary form declares it to be 'the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same and to appropriate it to the use or benefit of the person taking it.'" And under a sub-head of "Exposition of Definition" he adds: "Under a statute like this Texas one, an indictment in the common law form is wholly inadequate. It must allege, for example, that the goods were taken from the possession of one mentioned with intent to deprive the owner of the value of the same, and without his consent; and the proof must negative his consent; no one of which particulars is essential at the common law." (Bish. Stat. Crimes, §§ 412–414.)

Here we find the greatest departure from the common law definition of theft that obtains in any State, and, it being settled that to the same extent must the indictment depart in allegation, hence the departure in proof.

To illustrate: At common law there was no such allegation as that the property was taken without the consent of the owner, and hence there was no necessity for making such proof; but as this allegation is essential under the departure made by the statute in this State, such proof must be made.

We have seen that in this State there is a wide departure from the common law definition of larceny, and hence in allegation; therefore, there must be of necessity a departure in the proof. For, as a general rule, if an allegation is required, its proof is also re-

quired; it being necessary to prove all *essential allegations*. Why this departure, and what effect has it as to necessary allegation and proof?

At common law a person may have been in actual possession, care, control and management of property. By all others save the real owner, he may be considered the actual owner of the property; yet neither the indictment nor proof need mention him at all, if the property be charged in the real owner. A., the owner, may live in Canada, may have never seen Texas; yet, if he own property in this State which is in the possession of his agent, if the property be alleged in him, nothing whatever is required to be said of the agent either in allegation or proof, when *apparently* the agent was the actual owner of the property. This is the rule at common law; is it the rule here is the question.

We think not; because we believe our Legislature intended to restrict the State (this we infer from the departure as to the meaning of theft) so as to require the prosecutor to go into particulars. The defendant must be informed as to facts with much greater particularity than at common law. The indictment must allege that he took the property from the *possession* of some *person*. This person must be named; and this person must have possession, actual or constructive, of the property at the time it is taken. If his relation to the property is rendered closer or nearer than that of the real owner, by reason of the fact that he is in actual care, control or management of the same, then in that case the person bearing such relation is the proper person in whom to allege the possession; in other words, from such person the possession must be alleged to have been taken. Why? Because such person, occupying such relation to the property, is apparently the real owner, and the rule which requires that the indictment name the owner applies with equal force in the case stated.

Again, the Legislature intended that the prosecutor should go into particulars so that defendant would be thoroughly prepared to meet the charge. The State must charge that he took the property from the possession of the person in actual care, control or management, because such person is more likely to be viewed as the actual owner than is the real owner; and hence such allegation is necessary to a more perfect and exact description of the transaction than was required at common law. A. is in the actual control, care or management of a certain horse. B. is charged with its theft. In order to furnish B. with a minute and particular description of the transaction, and inform him that he is charged with taking the horse from the

possession of A.,— this, we think, is required by the departure of our statute from the common law; and in this departure we think we can perceive wisdom and justice.

We have thought proper to add the above observations to those made in *Bailey* v. *The State*, 18 Texas Ct. App., 426, and *Frazier* v. *The State*, id., 434. The subject is, however, by no means exhausted; it is one full of nice and to the writer very troublesome questions.

We are of the opinion that the evidence failed to sustain the allegation that the property was taken from the possession of Huegele, but, on the other hand, the indictment should have alleged that the property was taken from the possession of Haby instead of Huegele. If the indictment had alleged the property in Haby, and that it was taken from his possession, none of these questions would have arisen. Or, if it had alleged that it was taken from the possession of Haby, who was holding the same for Huegele, all would have been easy sailing.

The judgment is reversed and the case remanded.

*Reversed and remanded.*

[Opinion delivered January 20, 1886.]