John McGrew v. The State.

*No. 532.  Decided December 7.*

1. **Practice — Plea of Defendant, when Required.** — By article 603, Code of Criminal Procedure, it is provided: " In all cases less than capital, the defendant is required when his cause is called for trial, before it proceeds further, to plead by himself or his counsel whether or not he is guilty." And by article 604 it is further provided, that "by the term 'called for trial,' is meant the stage of the cause when both parties have announced that they are ready, or when a continuance, having been applied for, has been denied."

2. **Same—Construction of Statutes.**—Articles 603 and 604 of the Code of Criminal Procedure, as above set out, are directory and not mandatory; and held further, that where on a trial for theft of cattle, and after defendant's application for continuance had been overruled, and a jury was empanelled and the indictment read before the defendant was called upon or required to plead, that this was a substantial compliance with the objects, purposes, and intent, as well as spirit of our statutes as to the plea of the accused, and was moreover the uniform practice in this State; and in such case if the defendant refuses to plead, it is the duty of the court to cause the plea of " not guilty" to be entered for him.

3. **Brands, Designation of — Horses and Cattle.** --Where the record of the brand designated that it was to be placed " on the ribs and hip" of the animal, *held*, that such designation was sufficient. Following Harwell v. The State, 22 Texas Court of Appeals, 251; Hayes v. The State, 30 Texas Court of Appeals, 404. And *held* further, that there is no statute which requires the record of a brand to designate whether it is for horses or cattle.

4. **Charge—Assumption of Facts in.**—Where in the opening paragraph of the charge, the court, in stating the nature of the accusation against the defendant, told the jury that the defendant was charged, in the indictment, with the theft of one head of cattle, the property of one B., *held*, that such preliminary statement by the court of the nature of the cause was not an assumption and instruction on the part of the court that the stolen animal was the property of B.

5. **Same — Accustomed Range.**—Where the court instructed the jury that " animals upon their accustomed range are, in law, in possession of the owner," *held*, correct both as matter of law and fact.

6. **Same — Accomplice Testimony.** — Where a charge on accomplice testimony announces the rules with regard to such testimony, as provided in approved forms which are well established, it is sufficient, though the jury are not told, in so many words, that any particular witness who has testified in the case is an accomplice.

7. **Application for Continuance — Admission of Truth of Facts Stated in.**—Where the facts stated in defendant's application for a continuance are admitted by the prosecution to be true, and such facts went as evidence to the jury, *held*, that defendant had no ground to complain that his application was refused.

Appeal from the District Court of Live Oak.  Tried below before Hon. R. W. Hudson.

Appellant, John McGrew, was convicted in the court below for the theft of one head of cattle, the property of one J. E. Bartlett, and his punishment was assessed at two years confinement in the penitentiary.

The State's case was mainly developed by the testimony of Jack Ricks, as follows: That on the evening of the first day of August, 1892, the defendant came to him at Wimmer's store, and asked him if he wanted some meat, and "I said that I did." He then told me that there was an animal down in the Mead Wilson pasture, branded Z5X, that he had traded for, and that if I would go down there with him, and help get it and kill it, he would give me half. I told him I would go with him. This was in the evening before the rain, and he did not then tell me what animal it was. After the rain, and late in the evening, he and I went up to the pasture, and found a dun heifer, with white in the flanks, of J. E. Bartlett's, branded Z5 on the ribs, and X on the hip, and the defendant said, "that is the animal," and I then roped it, and the defendant killed it by sticking it in the back of the head with a butcher's knife. We then skinned and cut it up, and then the defendant began to cut the brand out of the hide. I said, "Now, you have played hell, and got us into trouble." Defendant cut the brand out, and cut the ears off, and put them in my saddle pockets. He then threw the hide away in some brush, and we both took hold of the head together and threw it away in the brush. By this time it was about dark, and then we divided the meat. I took a hind quarter, and cut some of the meat off of the shoulders, and the defendant took the other hind quarter. We put the meat up before us, and started back towards town. We did not go to the bridge; defendant said that we had better go by the old crossing on the Sulphur. We went there, and started up the hill. The defendant was riding in front, and I was riding behind him on my horse at the time, when I saw Fred. Hinton; we then turned off to the right, and took the old road around the field, until we came to the road leading to my house, which is up the creek above town. There we parted, and I went home, and the defendant started in the direction of Woody Tullon's with his meat, and I carried mine home. That night I got to thinking about the meat being stolen, and concluded that I ought not to eat it; so early next morning I threw it away. I thought the defendant had traded for the animal until I saw him cutting out the brand. I am a man of family. McGrew is older than I am. We went down in the pasture about 1 o'clock, and could not find the animal, and came back to town. We went back again in the evening. I left from home, and the defendant met me at the gate of the Mead Wilson pasture, on the other side of Sulphur Creek.

It was proven by other testimony, that on the next day after the animal was killed defendant left the town of Oakville, and was arrested some dozen miles or more on the road going in the direction of Beeville. He had removed the shoes from the horse which he was riding, and had them in his saddle pockets, where the officers found them.

Defendant testified in his own behalf, and according to his testimony

the State's witness Jack Ricks came to him, and told him that he had killed a beef over in Mead Wilson's pasture, and that if he would go with him over there, and help him bring in the meat, he would give him a portion of it. That he went over there, found the animal killed, neatly skinned, and cut up. That there was no head, hide, or ears of the animal there at that time. That they cut the hind quarters apart, and that they took half of it, he one half and Rix the other, and brought it back to town with them. He stated as the reason why he had taken the shoes off his horse the next day, was because his pony was a small horse, and was newly broke, and did not travel so well with as without shoes when the ground was wet. He stated that his object and purpose in leaving town the next morning was to go to see one Atkins about renting some land.

The State proved, by one Wheless, that on the day that the animal was killed he heard the defendant, in Wimmer's store, in Oakville, ask Jack Ricks if he wanted some meat, and Jack said he did; when defendant then said, if he would go with him down to Mead Wilson's pasture and help him kill a yearling he (defendant) would give him half; and Jack said, "all right."

Over defendant's objection, the State also introduced in evidence the record of marks and brands of Live Oak County, which showed that the Z5 and X brand (on ribs and hip) was recorded in the name of Joseph Bartlett in the year 1875.

*D. P. Marr*, for appellant:—1. In a criminal case, if the defendant's plea is not entered at the time and in the manner as required by law, it is equivalent to no plea, and there is no issue joined. Cole v. The State, 11 Texas Ct. App., 68; George v. The State, Id., 96.

2. The statute is imperative, that when a case less than capital " is called for trial," the defendant shall be required to plead before the case shall proceed further, and it is the duty of the court to require the plea at that time. Code Crim. Proc., arts. 603, 604, 660; Shaw v. The State, 17 Texas Ct. App., 225.

3. Injury is presumed whenever there is a departure from those proceedings which the law declares shall be observed. The fact that a defendant does not interpose objection, nor insist upon his right to plead at the proper time, is no waiver of his right. 1 Bish. Crim. Proc., 3 ed., sec. 733; People v. Corbett, 28 Cole, 328; Schaffer v. The State, 3 Wis., 823; McGuillen v. The State, S. & M. (Miss.), 587; Pate v. The State, 21 Texas Ct. App., 191.

4. Defendant was not required to restrain the court from committing a fatal error. The law positively directs that the jury shall be empanelled directly after the plea has been received. Code Crim. Proc., arts. 534 to 538 inclusive; Reed v. The State, 19 S. W. Rep., 678; Willson's Crim. Forms, "Final Judgment."

5. Errors in the charge of the court are:

(1) It assumed that one head of cattle alleged to have been stolen was the property of one J. E. Bartlett.

(2) It charged that animals on their accustomed range were in possession of the owner, while there is no statutory provision which creates any such artificial status. On the contrary, the statute, which furnishes the only guide, declares, that "the possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care, or management of the property, whether the same be lawful or not. Penal Code, art. 729; Bailey v. The State, 18 Texas Ct. App., 426; Frazier v. The State, Id., 434.

(3) With regard to accomplice testimony, the court simply charged article 741, without mentioning the name of the accomplice, or making an application of the language of the article to him or his testimony; and failed to instruct them that an accomplice must be corroborated in some material respect; and further, if they should believe that he was corroborated by other evidence, that still they were the judges of his credibility, notwithstanding his corroboration. Brown v. The State, 9 Texas Ct. App., 87; Welden v. The State, 10 Texas Ct. App., 400. The charge also omitted to instruct the jury that an accomplice could not corroborate his own testimony, and refused to give defendant's requested instruction to that effect. House v. The State, 15 Texas Ct. App., 522; Blakely v. The State, 24 Texas Ct. App., 625. In this connection the court should also have charged the jury, that they could not consider the testimony of an accomplice at all unless sufficiently corroborated, and even then they were not bound to believe him, but might still reject his testimony as unworthy of belief. Code Crim. Proc., art. 728; 9 Texas Ct. App., 87.

(4) The verdict of the jury was contrary to the law and the evidence. Defendant, if guilty of any offense, was only guilty of receiving stolen property.

No brief for the State has come into the hands of the Reporter.

DAVIDSON, Judge.—Defendant was charged with and convicted of cattle theft, and his punishment assessed at confinement in the penitentiary for a term of two years, from which conviction he prosecutes this appeal.

In so far as the ruling of the court on defendant's application for a continuance is concerned, no error in perceivable. We do not deem the testimony material; but, if material, then the bill of exceptions shows that the district attorney admitted the facts stated in the application to be true, and they went to the jury as evidence in the case. Willson's Crim. Stats., sec. 2184.

By article 603, Code of Criminal Procedure, it is provided, that " in

all cases less than capital the defendant is required, when his case is called for trial, before it proceeds further, to plead by himself or counsel whether or not he is guilty;'' and article 604 provides, that '' by the term ' called for trial' is meant the stage of the cause when both parties have announced that they are ready, or when a continuance, having been applied for, has been denied.'' In this case the application for a continuance was over-ruled, and the parties announced ready for trial. The defendant at that time was not required to enter his plea, but the jury were empanelled and sworn. The district attorney having read the indictment, the defendant was then called upon to make his plea to the same, which he refused to do, upon the ground that he should have been required to plead before the jury was empanelled, or rather after his continuance had been over-ruled, and the announcement of ready for trial had been made; and that he, not having been required to announce at that time, could not be re-quired to plead to the indictment after it had been read.

By article 660, Code of Criminal Procedure, the order of proceeding in trials is provided, and subdivision 1 thereof requires the indictment shall be read to the jury; subdivison 2, that the special pleas, if any, shall be read by defendant's counsel; and if the plea of not guilty is relied upon, it will also be so stated. The uniform practice in this State, as we understand it, in felony cases less than capital, has been to require the plea to be entered after the indictment has been read, because by this rule all pleadings which present the issues to be tried before the jury enable them to understand what it is they are required to try. Articles 603, 604, supra, which would seem to require that the plea of not guilty must be interposed before the reading of the indictment, are simply directory, and not mandatory. We think the clear intention and spirit of the arti-cles of the code with regard to this matter are, that the plea must be en-tered before the introduction of any testimony on the trial of the cause, so that the jury may know what issues they are called upon to try; and where the plea has been interposed before the introduction of any testi-mony, the object and purpose of the statute has been fully subserved. This may be illustrated, as we think, conclusively, by reference to the practice provided for in capital cases. By article 516, Code of Criminal Procedure, it is specially provided in such latter cases that the indictment shall be read, and the defendant asked whether he is guilty or not, as therein charged, notwithstanding the fact that it is also required that he shall have been previously arraigned for the purpose of having the in-dictment read, and hearing his plea thereto. Article 509. The object and purpose of the provisions of this code are mainly for the purpose of having the issues to be tried fixed by the pleadings before the introduc-tion of testimony pertinent to these issues, so that the jury may be able to see the pertinency of the testimony, and properly apply it to the issues;

and where this has been done, we think the objects and purposes of the law have been fully subserved.

Where the defendant refuses, as in the case at bar, to plead after the indictment has been read, the court has the right, and it is its duty, to interpose the plea of not guilty for him, as is provided in article 517, with regard to capital cases, which provision has uniformly been held to be applicable alike to all cases of felony.   We are clearly of opinion that in all cases of felony less than capital, where, after reading the indictment, the defendant is called upon to plead, and he pleads not guilty, or in case he stands mute and refuses to plead, the court causes his plea of not guilty to be entered for him, the object, purpose, and spirit of the statute have been fully complied with.

There was no error in admitting the record of the mark and brand of the alleged owner, J. E. Bartlett.   The designation of the place as on the ribs and hip where the brand was to be placed was sufficient.   Hayes v. The State, 30 Texas Ct. App., 404; Harwell v. The State, 22 Texas Ct. App., 251.   Its being a regularly recorded brand was evidence of ownership, and properly introduced as such.   We know of no statute which requires the record of a brand to designate whether it is for horses or cattle.

The first objection to the charge is, that it assumed the ownership of the property to be in J. E. Bartlett, the alleged owner.   The charge is not obnoxious to this objection.   The opening paragraph of the charge simply stated to the jury the nature of the case, which was that the defendant was charged in the indictment with the theft of one head of cattle, the property of J. E. Bartlett.   This was not an assumption on the part of the court that the animal was the property of Bartlett, but was simply a statement that the indictment so charged; and was not properly a part of the charge, but merely a preliminary statement of the nature of the accusation against the defendant.

The fourth paragraph of the court's charge is called in question.   The proposition announced in this charge was that "animals upon their accustomed range are in law in possession of the owner."   This proposition is well established law in this State, and is, we think, manifestly correct, both as matter of law and fact.   Willson's Crim. Stats., secs. 1273, 1297, and authorities there collated; Alford v. The State, ante, p. 299.   Until the possession of the owner is ousted by some other person who exercises actual care, control, and management of the animal, it is in possession of the owner.

Objection is made to the charge of the court in regard to accomplices' testimony.   This objection we do not consider maintainable.   While it is true the charge did not tell the jury in so many words that Ricks was an accomplice, still it gave them the rules of law with regard to accomplices' testimony, and followed almost literally the form for such a charge

prescribed by Judge Willson in his invaluable work on forms (Willson's Criminal Forms, 714a), which has been held time and again amply sufficient, especially in the absence of any special requested instruction making the charge more explicit in its application to the facts of the case. Suffice it to say, the general charge, together with the special requested instructions as given, we think fully covered the law applicable to the facts in the case, and defendant has no right to complain. The court did not err in declining to give the special requested instructions which were refused.

The only remaining error assigned is the insufficiency of the evidence to support the conviction. In this we do not concur with the learned counsel for appellant. We are of opinion that every allegation in the indictment is sustained by the proof adduced on the part of the State; and having found no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.