## Sam Truett v. The State.

No. 3109.    Decided June 3, 1914.

Rehearing denied June 26, 1914.

**1.—Murder—Continuance—Admission by State.**

Where defendant filed his application for continuance, and the State admitted as true every fact sought to be proven by the defendant by the witnesses set out in his motion for a continuance, and the court instructed the jury that they were bound to take such evidence as true, the defendant could not complain on this ground.

**2.—Same—Insanity—Recent Use of Intoxicating Liquors.**

Under article 41, Penal Code, the recent use of intoxicating liquors is no defense to crime, unless such use has been so continuously for so long a time and

so excessively as to produce delirium tremens, etc., and the criminal act takes place while the defendant is suffering from such condition of the mind; and where the admissions by the State can not be construed that defendant at the time of the homicide was suffering from delirium tremens, but that he .was only temporarily insane, there was no error in the court's failure to instruct a verdict of not guilty, the court instructing the jury that such testimony could be taken into consideration in mitigation of the punishment.

### 3.—Same—Manslaughter—Rule Stated—Intoxicating Liquors.

When one voluntarily drinks intoxicating liquors and produces in himself an excited state of mind, this would not be adequate cause under the law to reduce the homicide to manslaughter, and there was no error in the court's failure to submit the law of manslaughter on such testimony.

### 4.—Same—Legislative Intent—Statutes Construed.

The Legislature never contemplated nor intended that the recent use of intoxicating liquors, etc., should reduce an unlawful killing below the grade of murder, and the. mere consolidation of the two degrees of murder and· defining murder as one offense would not require or call for any other construction of article 41, Penal Code, than that heretofore given.

### 5.—Same—Accidental Shooting—Evidence—Negligent Homicide.

Where, upon trial of murder, there was nothing to suggest an accidental shooting by the defendant, there was no error in refusing to admit testimony that the pistol with which defendant fired the fatal shot was tricky and easy on the trigger, and there was no error in the court's failure to submit accidental or negligent homicide.

### 6.—Same—Self-defense—Charge of Court.

Where, upon trial of murder, there was no evidence raising the issue of self-defense, there was no error in the court's failure to charge thereon, neither did the court err in refusing special requested charges embraced in his main charge.

Appeal from the District Court of Hill. Tried below before the Hon. Horton B. Porter.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Morrow & Morrow,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of recent use of intoxicating liquors: Clore v. State, 26 Texas Crim. App., 624; Houston v. State, 26 id., 657; Guitan v. State, 11 id., 544; Hernandez v. State, 32 Texas Crim. Rep., 271; Mays v. State, 50 Texas Crim. Rep., 165.

HARPER, JUDGE.—Appellant was prosecuted and convicted of murder, and his punishment assessed at ten years confinement in the State penitentiary.

The deceased was at the lot of Mr. Johnson working with some mules, when appellant rode up, and he in his dying declarations details the difficulty as follows: "When Sam Truett came he rode up on his horse and called me and I went out to him and he said, 'Brigham, how much do you owe me?' I said, 'I owe you $17.50 but you figured it $18.50,

so I'll pay you $18.50.' He said, 'Brigham, do you mean to pay me or not?' I told him, 'Sam, yes I aim to pay you. If I wasn't aiming to pay you I would tell you.' He raised up in his saddle and said, 'Brigham, by God, do you aim to pay me?' I said, 'Yes, I aim to pay you, I am not that sort of a man. I borrowed your hard money and I expect to pay you, Sam, as quick as I can get it.' He turned and asked me did I think he was scared of me. I said, 'No, you have no right to be afraid of me. I haven't done anything to you.' Then he said, 'By God, I ain't.' I said, 'That's all right, Sam.' Then I turned and walked on into the lot and got Hez Brown to drive Mr. Johnson on over to Hillsboro. I told Hez I would walk over to Hillsboro. Then Mr. Johnson and them went on out of the lot and left Will Johnson and Gentry and Roy Brown in the lot and I got through the fence and started and Sam overtaken me again and asked me again, 'Brigham, how much do you owe me?' I said, 'You figure that I owe you $18.50 and I will pay you as quick as I can.' He got up in the stirrup of his saddle and undone the front of his pants and got his gun and was leaning over on his saddle and I walked off from him and started back towards the house and Sam said, 'If you say three words to me I'll kill you,' and I said, 'You'll just have to kill me, I haven't done a thing to you.' Then he shot me. He then rode off a little bit and stopped and looked back and then rode off again. I was unarmed when he shot me. The ball entered my stomach."

Gentry Welch, Roy Brown and Will Johnson testify, in the main, to the same state of facts. Appellant testifies he was so drunk he has no recollection of the difficulty—does not remember the occurrence, nor how it occurred.

When the case was called for trial he filed an application for continuance on account of the absence of several witnesses who lived in Lee county, his former home. By these witnesses he stated he expected to prove that they knew his general reputation, and that he was a peaceable, quiet, inoffensive, law-abiding man; he states he also expected to prove by them that at times he was addicted to the excessive use of intoxicating liquors, and that the effect is to produce upon him such a condition of mind of great excitement at times and such as to render him at the time incapable of forming a criminal intent, and to such extent as to render him incapable of knowing right from wrong. When this application was filed the State filed the following written admission: "The State admits as a fact that the witness named in defendant's motion for a continuance knew the defendant to be addicted to the excessive use of intoxicating liquor at times, and that its effect upon him was to produce such a condition of mind of great excitement at times, when under the influence of such liquor, and at such times render him incapable of forming a criminal intent, and to such an extent as to render him incapable of knowing right from wrong, and that such facts are true. The State admits as true every fact sought to be proven by the defendant by the witnesses set out in his motion for a continuance." At the request of appellant the court instructed the jury: "You are

instructed that all of the statements of facts which are set out in the defendant's written application for a continuance which has been read in evidence before you by defendant's counsel, are admitted by the State to be true, and you are bound under the law to treat each of the said statements of fact so admitted as true and none of the evidence introduced before you is intended or can be considered by you as contradicting any of the said admitted facts contained in said application for a continuance." In McGrew v. State, 31 Texas Crim. Rep., 336, it is held that if the prosecuting officers admit the facts stated in the application for continuance to be true and if they go to the jury as evidence, the defendant has no right to complain that the application was overruled. In this case the court permitted the entire application for continuance to be read in evidence; also the written admission of the State, and then instructed the jury that they were bound to take such evidence as true, and that they could not consider any evidence in contradiction of said admitted facts, and certainly appellant in this case has no right to complain. However, appellant insists that a proper construction of the language used in the application for continuance would show that state of insanity which would entitle him to an acquittal, and the court should have so instructed the jury. Doubtless this would be true prior to the adoption of article 41 of the Penal Code, but by this provision when the insanity is produced by the voluntary recent use of intoxicating liquors, and it is only temporary, coming on with the excessive drinking, and departing when the effect of the intoxicating liquor has passed, it is no defense to crime, unless the whisky has been used so continuously for so long a time and so excessively as to produce delirium tremens, or mania a potu, and the criminal act takes place while the person is suffering from such delirious, crazy condition of mind. The admissions in this case can not be construed as an admission that appellant, at the time of this homicide, was suffering from delirium tremens, but the admission is that when drunk he was temporarily insane only, and the evidence outside of this admission is ample to show that when not drunk appellant, as testified to by his own witnesses, was rational and sensible as any ordinary negro; in fact Mr. Pate says that when so appellant "was rather more than an ordinary negro so far as intelligence is concerned." The evidence would show that on this "spree" appellant began drinking only the day before; that he, while drinking, was not drunk the day or night before, nor early in the morning, Mr. Johnson, a witness for appellant, saying, when he first saw him that morning appellant was apparently all right, but when he saw him again about two hours thereafter he was then drunk, although still able to ride his horse and talk. In fact, all the testimony shows that on the morning of the homicide and at the time of the homicide appellant was not so drunk that he could not ride his horse, and go about, but of course this does not preclude the idea that his mind was not in that condition from intoxication which would prevent him from remembering the transaction. Whisky may produce temporary insanity without, to use the expression of the street, "flooring a man." And

as the evidence, and all the evidence, would tend to show only temporary insanity, and did not in the least tend to show that appellant was at the time of the homicide, prior nor subsequent thereto, suffering from delirium tremens, or a condition that is sometimes expressed as "settled insanity" as distinguished from temporary insanity, the court did not err in refusing the special charges requesting him to instruct the jury to acquit, but he rightly instructed them the temporary insanity produced by intoxication should be taken into consideration in mitigation of the punishment.

Appellant also contends that the court erred in not submitting the issue of manslaughter, as the county attorney admitted that intoxication created an "excited state of mind" in appellant. One voluntarily drinking intoxicating liquors and producing in himself an excited state of mind, would not be adequate cause under the law of this State to reduce an unlawful killing to the grade of manslaughter. Appellant says he knows nothing of what took place on the occasion, and the other witnesses to the homicide testify to no state of facts which would be "adequate cause" in law to produce a state of mind which would reduce the offense below the grade of murder. Appellant contends that as when the laws of this State divided murder into two degrees article 41, Penal Code, provided that in case of murder, the temporary insanity produced by excessive use of intoxicants might be considered by the jury for the purpose of determining the degree of murder, as the law has been amended defining murder so as to consolidate murder of the first and second degree, and article 41 was not amended, it necessarily must be so applied now as to authorize the jury to consider whether or not such condition will reduce the offense to manslaughter. This court has often had occasion to construe this statute, and has always held that temporary insanity produced by intoxication would not reduce the offense to manslaughter, and we think properly so held, for manslaughter under our Code is defined as a state of mind produced by an "adequate cause,"— the wrong-doing of the person slain or some 'one acting with him. Certainly one by his own acts can not produce this "adequate cause" by drinking intoxicating liquor or committing any other act. It is the acts of the opposite party that must produce the adequate cause, not appellant's own acts. The Legislature never contemplated nor intended that such condition should reduce an unlawful killing below the grade of murder, and the mere consolidating of the two offenses of murder in the first and the second degree, and defining murder so as the one offense now embraces both the former, would not require or call for any other construction of article 41 than that heretofore given.

Appellant's wife was permitted to testify "that the pistol with which appellant fired the fatal shot was a tricky pistol, and one had to be pretty careful with it. That one don't want to fool with it at all unless he aims to shoot it, because if you just touch the trigger it will go off." In addition to this appellant desired to prove by the witness "that on a former occasion, before the homicide, while defendant was handling the pistol, it went off and wounded him in the leg." Appellant contends

that this testimony was admissible as tending to raise the issue of accidental homicide. As hereinbefore stated, appellant testified he had no recollection of the transaction, and could tell nothing about how it occurred. The State's evidence showed an intentional shooting, and all the witnesses who witnessed the difficulty so testify, and the fact that defendant on a prior occasion had shot himself in the leg with this pistol, would not raise the issue that on this occasion it was accidentally fired, when the witnesses testify that appellant pulled his pistol, pointed it at deceased and fired it. There is nothing to suggest an accidental shooting on the occasion when appellant killed deceased, and the testimony offered was not germane to any issue raised by the evidence had on the trial. Therefore, the court did not err in refusing to submit the issues of accidental or negligent homicide, as the evidence, and all the evidence, shows an intentional shooting. The location of the wound does not even suggest much less raise these issues or either of them. Appellant was horse-back while deceased was standing on the ground. The shot entered his left side and passed down through the bladder. Downward would be the natural range of a ball intentionally fired under such circumstances.

Neither was there any testimony raising the issue of self-defense. Appellant, as hereinbefore stated, testifies that he was so drunk he knew nothing about the occurrence, and none of the other witnesses testify to any state of facts which would show or tend to show that appellant was then in danger of losing his life or suffering some serious bodily injury.

The only complaints of the charge of the court have heretofore been herein discussed, and the special charges in so far as they were the law of the case were fully covered by the court's main charge, and the court did not err in refusing to give those not given.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 26, 1914.—Reporter.]